IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CT-3184-FL

| | | |
|---|---|---|
| JEFFREY EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SHERIFF LARRY M. PEIRCE, MAJOR GREENFIELD, LIEUTENANT SCOTT, DR. CLEMENT L. MCCASKILL, OFFICER CARCIRIERI, MIKE COX, CHRIS WORTH, and CHUCK ARNOLD, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on defendants' motions to dismiss (DE 29, 31, 34, 37) pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (4), (5) and (6). The issues raised were fully briefed, and are ripe for adjudication. For the following reasons, the court grants defendant Dr. Clement L. McCaskill's ("McCaskill") motion to dismiss (DE 29, 31), denies Officer Carcirieri's ("Carcirieri") motion to dismiss (DE 37), and grants in part and denies in part the remaining defendants' motion to dismiss (DE 34).

**STATEMENT OF THE CASE**

On August 5, 2013, plaintiff, a pretrial detainee, filed this action pursuant to 42 U.S.C. § 1983 against defendants Chuck Arnold ("Arnold"), Officer Carcirieri ("Carcirieri"), Mike Cox ("Cox"), Major Greenfield ("Greenfield"), Dr. McCaskill ("McCaskill"), Lieutenant Scott ("Scott"),

previously-named defendant Sheriff Carey Winders ("Winders"),[1] and Chris Worth ("Worth"). Plaintiff alleged that defendants violated his rights pursuant to the Fourteenth Amendment to the United States Constitution by acting with deliberate indifference to plaintiff's serious medical needs. Plaintiff also alleged that defendants Arnold, Carcirieri, Cox, Greenfield, Scott, Winders, and Worth violated his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution in relation to the performance of a visual body cavity search. Finally, plaintiff complained that his prison conditions violated the Fourteenth Amendment to the United States Constitution. Plaintiff subsequently filed a motion for a jury demand, and counsel for defendant Winders filed a suggestion of death on January 28, 2014.

On January 28, 2014, McCaskill filed a motion to dismiss, arguing that plaintiff failed to state a Fourteenth Amendment claim for deliberate indifference to plaintiff's serious medical needs. McCaskill subsequently filed a second motion to dismiss seeking dismissal on the alternative ground of insufficient service of process. The motions were fully briefed.

Defendants Arnold, Cox, Greenfield, Scott, and Worth subsequently filed a motion to dismiss, arguing that plaintiff failed to exhaust his administrative remedies prior to filing his complaint. These defendants, alternatively, argue that dismissal of plaintiff's claims against them is appropriate because plaintiff failed to obtain proper service of process and failed to state a claim upon which relief may be granted. The motion was fully briefed.

On February 6, 2014, defendant Carcirieri filed a motion to dismiss, arguing that plaintiff failed to state a claim upon which relief may be granted. The motion was fully briefed.

---

[1] As set forth herein, per the court's August 15, 2014, order, defendant Wayne County Sherriff Larry M. Pierce was substituted for defendant Winders upon suggestion of death of defendant Winders. The court constructively amends the caption of this order to reflect the substitution.

2

On February 11, 2014, plaintiff filed a motion to compel defendants to provide him with a copy of the videotape recording of the incident at issue. Defendants Arnold, Cox, Greenfield, Scott, and Worth then filed a motion to stay discovery, which was fully briefed. Finally, plaintiff filed a motion to consolidate this action with another action he filed in Edwards v. Cox, 5:13-CT-3241 (E.D.N.C. 2013).

On August 15, 2014, the court entered an order granting plaintiff's motion for a jury demand and defendants' motion to stay discovery pending the resolution of defendants' motions to dismiss. Because the court stayed discovery in this case, it denied as moot plaintiff's motion to compel the videotape. Finally, the court dismissed without prejudice plaintiff's individual capacity claims against Winders and substituted Wayne County Sheriff Larry M. Pierce for defendant Winders as the proper party for plaintiff's official capacity claims.

## STATEMENT OF THE FACTS

The facts as alleged by plaintiff in his complaint can be summarized as follows. After a traffic stop on March 18, 2013, plaintiff was taken to Wayne County Detention Center (the "detention center") for questioning. (Compl. p. 3.) At the detention center, an officer applied handcuffs and a waist chain to plaintiff. (Id.) Defendants Worth and Arnold then grabbed plaintiff on each side of his body applying force and pressure to plaintiff's arms and shoulders, causing pain to plaintiff's wrist, arms, shoulder, and neck. (Id.) Cox then removed plaintiff's sweat pants and boxers and "pulled [his] butt cheeks apart violently," causing plaintiff's rectum to stretch and split. (Id. p. 4.) Worth and Arnold continued to apply force to plaintiff's arms and shoulders during this time. (Id.) At some point, Worth asked Cox if Cox saw anything and then the encounter ceased,

3

and the officers returned plaintiff to a standing position. (Id.) After the encounter, plaintiff felt as if he had been "beat up and rape[d]." (Id.)

Plaintiff subsequently requested medical attention, but a sheriff's deputy told plaintiff that the deputy had ordered him to transport plaintiff to the jail. (Id. p. 5.) When plaintiff arrived at the jail, he discovered that a code had been entered indicating that he was a problem. (Id.) The officers at the jail and the jail nurse refused to acknowledge plaintiff. (Id.) Plaintiff told defendant Scott that he was sexually assaulted, and Scott told plaintiff that plaintiff should have handled the issue before arriving at the jail. (Id.) Plaintiff attempted to show the staff that he had blood on his fingers, but no one would listen. (Id.)

Jail officers then took plaintiff to "booking." (Id.) Plaintiff saw defendant McCaskill and told McCaskill that he wanted to go the Wayne County Hospital because his rectum was burning and bleeding. (Id.) McCaskill instructed plaintiff to fill out a sick call request and stated that "they don't send inmates out unless life or death and [plaintiff's] claim against deputies wasn't life or death." (Id.) A few minutes later McCaskill went to plaintiff's cell with Captain Hines and "other jailers." "Dr. McCaskill had glove over right hand ointment on left told me [plaintiff] was going to do rape kit that [plaintiff] would be handcuffed and had to be very still because if not [plaintiff] would be tazed, so [plaintiff] refused." (Compl. p. 6.) There additionally was activity by the detention center staff in the hallway and a female guard monitoring surveillance video of plaintiff's cell in the control booth. (DE 39, p. 2.) Plaintiff then asked for tissue and Captain Hines provided plaintiff with tissue. (Compl. p. 6.)

4

In accordance with an order issued by Cox, plaintiff was placed in a "dry" cell with nothing in his cell. (Id.) Plaintiff was "freezing for 3-4 days no water to wash [his] hands. (Id.) Plaintiff additionally was not permitted to flush the toilet. (Id.)

At plaintiff's initial appearance, plaintiff informed the district attorney and judge that he was sexually assaulted. (Id.) Plaintiff requested that the video surveillance equipment capturing the alleged assault not be destroyed or tampered with. (Id.) The judge and district attorney assured plaintiff that the video would be preserved. (Id.)

On March 19, 2013, Greenfield and Winders visited plaintiff. (Id.) Plaintiff states that both defendants intimidated him "saying [plaintiff was lying] and if [plaintiff] wanted normalcy [he] wouldn't keep [lying]." (Id.) Greenfield then told plaintiff that he had reviewed the video and did not see the conduct described by plaintiff. (Id.)

Plaintiff subsequently was taken to Wayne Radiology for stomach x-rays, and officers told plaintiff that a warrant would be waiting at the clinic. (Id.) Plaintiff told the doctors and nurses at Wayne Radiology that he had been sexually violated by Cox, Worth, and Arnold. (Id. p.7.) Plaintiff told the medical staff at the clinic that he "wanted to be checked out a sexual assault kit done they-Doctors and nurses-told me to hold it down that they do not do that there that's when [plaintiff] realized there was no warrant so [he] said NO." (Id.) Plaintiff was returned to the jail. Plaintiff states that he agreed to go back to the clinic to get neck and shoulder x-rays, but again refused the x-ray when he discovered that the medical staff intended to x-ray his stomach. (Id.)

5

**DISCUSSION**

A.   Motion to Dismiss for Insufficient Service of Process

Defendants McCaskill, Greenfield, Scott, Cox, Worth, and Arnold assert that plaintiff's action against them should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5) because plaintiff failed to effectuate proper service of process in accordance with Federal Rule of Civil Procedure 4. Proper service of process (or waiver of service under Fed. R. Civ. P. 4(d)) is necessary for the court to exercise personal jurisdiction over a defendant. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999). Under Rule 4(m), if service of the summons and complaint is not made upon a defendant within one hundred twenty (120) days after the filing of the complaint, the court must dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time, unless the plaintiff can show good cause. Fed. R. Civ. P. 4(m).

Rule 4(e)(1) permits a plaintiff to serve individual defendants "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). The North Carolina Rules of Civil Procedure permit service "[b]y mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee." N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(c). A plaintiff may deliver the documents to defendant's place of employment. See id.; Moore v. Cox, 341 F. Supp. 2d 570, 573 (M.D.N.C. 2004); Waller v. Butkovich, 584 F. Supp. 909, 926 (M.D.N.C. 1984). When a defendant challenges service by certified mail, a plaintiff must submit an affidavit stating that a copy of the summons and complaint was mailed and attach the return receipt indicating that service was

received in accordance with N.C. Gen. Stat. § 1-75.10(a)(4).  See Moore, 341 F. Supp. 2d. at 573. If the attached return receipt was signed by a person other than the addressee, North Carolina presumes "that the person who received the mail . . . and signed the receipt was an agent of the addressee authorized by appointment or by law to be served or to accept service of process." N.C. Gen. Stat. § 1A-1, Rule 4(j2)(2); see Moore, 341 F. Supp. 2d. at 573; Fender v. Deaton, 130 N.C. App. 657, 662, 503 S.E.2d 707, 710 (1998).  A party may rebut this presumption of valid service with "affidavits of more than one person showing unequivocally that proper service was not made upon the person of the defendant." Grimsley v. Nelson, 342 N.C. 542, 545, 467 S.E.2d 92, 94 (1996); see Moore, 341 F. Supp. 2d at 573.

Defendants Greenfield, Scott, Cox, Worth, and Arnold have not shown that service was improper.  The United States Marshal filed a return of service on these defendants indicating service on them at their place of employment through certified mail, return receipt requested.  Defendants Greenfield, Scott, Cox, Worth, and Arnold have not presented individual affidavits challenging the service or the "affidavits of more than one person[.]" Grimsley, 342 N.C. at 545, 467 S.E.2d at 94; see Moore, 341 F. Supp. 2d at 573.  Because defendants Greenfield, Scott, Cox, Worth, and Arnold have not overcome the presumption of valid service under North Carolina law, the court denies their motion to dismiss without prejudice to the extent that it is based on improper service.

As for McCaskill, although McCaskill has demonstrated that the individual who signed the return of service was not his authorized agent, McCaskill has not shown how the service failed to notify him of the suit.  Accordingly, the court denies McCaskill's motion to dismiss for insufficient service of process.  See, e.g., Thomas v. Nelms, No. 1:09-CV-491, 2013 WL 593419, at *1 (M.D.N.C. Feb. 14, 2013).

7

B.     Motion to Dismiss for Failure to State a Claim

   1.     Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678, and Twombly, 550 U.S. at 557).

   2.     Analysis

      a.     Exhaustion of Administrative Remedies

Defendants Greenfield, Scott, Cox, Worth, and Arnold raise the affirmative defense that plaintiff failed to exhaust his administrative remedies before filing this action. See Jones v. Bock, 549 U.S. 199, 216 (2007) ("failure to exhaust is an affirmative defense under [42 U.S.C. § 1997e]"); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005). The Prisoner

8

Case 5:13-ct-03184-FL   Document 54   Filed 09/03/14   Page 8 of 17

Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 84 (2006). Exhaustion is mandatory. Woodford, 548 U.S. at 84; Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."); Anderson, 407 F.3d at 677. A prisoner must exhaust his administrative remedies even if the relief requested is not available under the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). "[U]nexhausted claims cannot be brought in court." Jones, 549 U.S. at 211.

Here, defendants Greenfield, Scott, Cox, Worth, and Arnold argue that plaintiff's action against them should be dismissed for failure to exhaust because plaintiff failed to attach copies of his alleged grievances to his complaint. However, failure to exhaust administrative remedies is an affirmative defense, and "need not be alleged by the plaintiff in his complaint." Anderson, 407 F.3d at 677. Because plaintiff was not required to plead and prove exhaustion, the court DENIES defendants' motion to dismiss as to this ground.

      b.      Defendant Carcirieri

Defendant Carcirieri asserts that plaintiff's action against him should be dismissed for failure to state a claim because plaintiff ascribes no role for Carcirieri in the alleged assault. In response, plaintiff contends that Carcirieri observed the alleged sexual assault, but did nothing to intervene. Plaintiff's allegations against Carcirieri state a Fourteenth Amendment claim. See Randall v. Prince George's County, 302 F.3d 188, 204 (4th Cir. 2002). Thus, Carcirieri's motion to dismiss is DENIED.

9

c.     Defendants McCaskill

The court next turns to plaintiff's claim that McCaskill acted with deliberate indifference to plaintiff's serious medical needs in violation of the Fourteenth Amendment to the United States Constitution. Courts evaluate confinement conditions of pretrial detainees under the due process clause of the Fourteenth Amendment, rather than under the Eighth Amendment. See, e.g., Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). As a practical matter, the analysis under the due process clause and the analysis under the Eighth Amendment is materially indistinguishable. See, e.g., Riley v. Dorton, 115 F.3d 1159, 1166–67 (4th Cir. 1997) (en banc), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010) (per curiam); Hill v. Nicodemus, 979 F.2d 987, 991–92 (4th Cir. 1992). "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious' "–and the second prong is subjective–the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " See Strickler, 989 F.2d at 1379 (quotations omitted).

The court focuses on the second prong of the Eighth Amendment test–whether McCaskill acted with deliberate indifference to plaintiff's serious medical needs. "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and

10

disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). An inmate is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

Taking plaintiff's allegations in his complaint as true, plaintiff simply alleges that McCaskill failed to send him to the hospital for reports of rectal bleeding. Plaintiff further states that he refused McCaskill's attempt conduct an examination or "rape kit." Plaintiff's disagreement with McCaskill's form of treatment is not actionable pursuant to § 1983. Russell, 528 F.2d at 319; Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (citation omitted) ("Disagreements between and inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."). Further, any mistakes of medical judgment are not actionable pursuant to § 1983. See Estelle, 429 U.S. at 107 ("[T]he question of whether an X-ray-or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . . ."). Nor does any negligence in connection with McCaskill's treatment of plaintiff give rise to a constitutional violation. See Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). Thus, plaintiff failed to state a Fourteenth Amendment claim against McCaskill, and McCaskill's motion to dismiss is GRANTED.

To the extent plaintiff alleges that McCaskill's attempt to conduct a medical examination in some way violated his right to privacy because it was to be conducted in a holding cell or in view of a surveillance camera monitored by a female guard, such claim fails. Inmates do not have a

11

constitutional right to private consultation rooms. See Hudson v. Palmer, 468 U.S. 517, 525-526 (1984) (finding that the legitimate privacy expectations of inmates are greatly diminished); see also, Powers v. Federal Bureau of Prisons, No. 1:10-cv-1389, 2012 WL 2998510, at *16 (S.D.W. Va. May 23, 2012) ("The Court finds that although the circumstances of the exam were less than ideal and Defendants' failure to provide Plaintiff with a sheet was distasteful, such conduct does not result in deliberate indifference."); Jackson v. Wiley, 352 F. Supp. 2d 666, 682 (E.D. Va. Feb. 10, 2004) (finding that correctional officer did not violate inmate's constitutional right to privacy in his genitalia by performing a routine strip search of inmate during prison intake in the presence of two female nurses), aff'd, 103 F. App'x 505 (4th Cir. 2004). Moreover, "[a] male inmate's right to privacy is generally not violated by the occasional, inadvertent observation by female guards." Lucas v. Ruth, C/A No. 1:10-2465-TLW-SVH, 2011 WL 1831754, at *4 (D.S.C. Feb. 15, 2011) (collecting cases), report and rec. adopted, 2011 WL 1827773 (D.S.C. May 13, 2011); Pugh v. Ingram, No. 5:11-CT-3231 (E.D.N.C. July 16, 2012) (finding plaintiff's challenge to "the jails policy of placing cameras above the toilet in his segregation cell and above the showers 'which were observed by female officials'" failed to state a constitutional violation). Thus, plaintiff fails to state a constitutional claim.

To the extent plaintiff's allegations could be construed to allege violations of the Prison Rape Elimination Act, 42 U.S.C. §§ 15601-15609 (" PREA"),"[n]othing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act." De'lonta v. Clarke, No. 7:11-CV-00483, 2012 WL 4458648, at *3 (W.D. Va. Sept. 11, 2012) (collecting cases), aff'd, 548 F. App'x 938 (4th Cir. 2013) (per curiam). Thus, the court dismisses any claim which asserts a violation of PREA.

12

###        d.     Defendants Greenfield, Cox, Worth, and Arnold

Defendants Greenfield, Cox, Worth, and Arnold assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

To the extent plaintiff alleges that defendants Scott, Greenfield, Cox, Worth, and Arnold acted with deliberate indifference to plaintiff's serious medical needs, plaintiff fails to state a claim. As stated, the detention center staff summoned McCaskill to address plaintiff's medical issues. Prison officials are entitled to rely on medical judgments and expertise of prison physicians and medical personnel concerning the course of treatment deemed necessary for prisoners. See Shakka, 71 F.3d at 167 (citation omitted); Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir.2002) ("Prison officials cannot substitute their judgment for a medical professional's prescription."). Because defendants Greenfield, Scott, Cox, Worth, and Arnold relied upon McCaskill's medical judgment, this claim fails.

The court next addresses plaintiff's claim that Cox, Worth, and Arnold violated plaintiff's Fourth and Fourteenth Amendment rights in connection with the alleged manual body cavity search of plaintiff. Body cavity searches are not unconstitutional; however, the search must be reasonable and "not motivated by a punitive intent." Snider v. Hughes, 59 F.3d 167, 1995 WL 378519, *1 (4th

13

Cir.1995). At issue in this case is plaintiff's contention that defendants Cox, Worth, and Arnold sexually assaulted him in the course of the manual body cavity search. Sexual abuse of an inmate violates the Fourteenth Amendment. See, Woodford, 548 U.S. at 118 (Breyer, J., dissenting) ("Accordingly, those inmates who are sexually assaulted by guards, or whose sexual assaults by other inmates are facilitated by guards, have suffered grave deprivations of their Eighth Amendment rights."); Farmer, 511 U.S. at 834 ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society."); see also, Ellis v. Elder, No. 7:08-CV00642, 2009 WL 275316, at *3 (W.D. Va. Feb. 4, 2009) ("Sexual assault is not a legitimate part of a prisoner's punishment, and the substantial physical and emotional harm suffered by a victim of such abuse are compensable injuries.") (internal quotations and citations omitted).

Plaintiff additionally contends that defendants possess videotape evidence of the alleged sexual assault/excessive force, but that he has not yet had the opportunity to obtain the video through discovery. On this record, plaintiff has presented sufficient allegations to state a Fourteenth Amendment claim. See McMillian v. Wake County Sheriff's Dept., 399 F. App'x 824, 828-829 (4th Cir. 2010) (concluding that the district court abused its discretion and substantially prejudiced plaintiff by denying plaintiff's discovery requests which included alleged videotape evidence) Because the current record is insufficient to make a determination as to the issue of qualified immunity at this time, defendants' motion to dismiss is DENIED as to this ground.

To the extent plaintiff, in his February 18, 2014, pleading contends that defendants Cox and Worth violated plaintiff's constitutional rights because they refused to allow plaintiff to use the telephone, such allegation fails to state a claim. "There is no constitutional or federal statutory right to use a telephone while in prison." United States v. Alkire, No. 95-7885, 1996 WL 166400, at *

14

1 (4th Cir. Apr. 10, 1996); Coil v. Peterkin, 2009 WL 3247848, at *10 (M.D.N.C. Oct. 5, 2009) ("Since inmates do not have a constitutional right to telephone access, Defendant's denial of telephone access to Plaintiff is not a ground upon which Plaintiff can be granted relief."), aff'd, 401 F. App'x 773 (4th Cir. 2010). Thus, plaintiff's allegation pertaining to the use of the telephone fails to state a claim.

Finally, the court notes that plaintiff alleges that Greenfield, Cox, and Scott acted with deliberate indifference to his unsanitary prison conditions in violation of the Fourteenth Amendment. Defendants Greenfield, Cox, and Scott did not address this claim in their motion to dismiss. Thus, it remains pending.

      e.      Negligence

Defendants each move to dismiss plaintiff's state law negligence claim because plaintiff failed to state a claim upon which relief may be granted. North Carolina imposes substantive legal requirements that a person must follow to pursue a medical malpractice claim. See N.C. R. Civ. P. 9(j). Under North Carolina Rule of Civil Procedure 9(j), a plaintiff's medical malpractice complaint must assert that the medical care has been reviewed by a person who is reasonably expected to qualify (or whom the plaintiff will move to qualify) as an expert witness and who is willing to testify that the medical care received by the plaintiff did not comply with the applicable standard of care. See N.C. R. Civ. P. 9(j)(1), (2); see, e.g., Frazier v. Angel Med. Ctr., 308 F. Supp. 2d 671, 676 (W.D.N.C. 2004); Moore v. Pitt County Mem'l Hosp., 139 F. Supp. 2d 712, 713 (E.D.N.C. 2001); Acosta v. Byrum, 180 N.C. App. 562, 572, 638 S.E.2d 246, 253 (2006).

Alternatively, the complaint must allege facts establishing negligence under the common-law doctrine of *res ipsa loquitur*. See N.C. R. Civ. P. 9j(3). Failure to comply with Rule 9(j) is grounds

15

for dismissal of a state medical malpractice claim brought in federal court. See, e.g., Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 649 (M.D.N.C. 2004); Frazier, 308 F. Supp. 2d at 676–77; Moore, 139 F. Supp. 2d at 713.

Plaintiff's complaint fails to allege that he obtained certification from an expert willing to testify that his treating medical personnel did not comply with the applicable standard of care. Further, the doctrine of *res ipsa loquitur* "is allowed only when the occurrence clearly speaks for itself." Diehl v. Koffer, 140 N.C. App. 375, 378, 536 S.E.2d 359, 362 (2000); see, e.g., Tice v. Hall, 310 N.C. 589, 593, 313 S.E.2d 565, 567 (1984) (surgical sponge left in patient's body). In light of the evidence, the doctrine of *res ipsa loquitur* does not apply to plaintiff's claim. Thus, plaintiff fails to meet the requirements of Rule 9(j), and his negligence claim is DISMISSED without prejudice.

## CONCLUSION

Based upon the foregoing, the court rules as follows:

(1) McCaskill's motion to dismiss for insufficient service of process (DE 31) is DENIED;

(2) McCaskill's motion to dismiss (DE 29) pursuant to Rule 12(b)(6) is GRANTED and McCaskill no longer is a defendant in this action;

(3) the motion to dismiss filed by defendants Arnold, Cox, Greenfield, Scott, and Worth (DE 34) is GRANTED in part and DENIED in part. The court dismisses plaintiff's Fourteenth Amendment claim arising out of the alleged denial of access to the telephone and plaintiff's claim that defendants acted with deliberate indifference to his serious medical need. The remainder of this motion to dismiss is DENIED.

(4) Carcirieri's motion to dismiss (DE 37) is DENIED;

(5) plaintiff's negligence claims are DISMISSED without prejudice;

(6) An initial order will follow.

SO ORDERED, this the 3rd day of September, 2014.

/s/ Louise W. Flanagan
LOUISE W. FLANAGAN
United States District Judge