IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CT-3184-FL

| | | |
|---|---|---|
| JEFFREY EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MAJOR GREENFIELD, LIEUTENANT SCOTT, OFFICER CARCIRIERI, MIKE COX, CHRIS WORTH, CHUCK ARNOLD, DR. CLEMENT L. MCCASKILL, and SHERIFF LARRY M. PIERCE, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on defendants' respective motions for summary judgment (DE 176, 183) pursuant to Federal Rule of Civil Procedure 56(a). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' respective motions.

**STATEMENT OF THE CASE**

For ease of reference the case background as set forth in the court's January 12, 2016, order is set forth below:

> On August 5, 2013, plaintiff, a pretrial detainee, incarcerated at the Wayne County Detention Center (the "detention center") filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 against defendants Sheriff Carey Winders ("Winders"), Lieutenant Scott ("Scott"), Dr. Clement L. McCaskill ("McCaskill"), Officer Carcirieri ("Carcirieri"), Mike Cox ("Cox"), Chris Worth ("Worth"), Major Greenfield ("Greenfield"), and Chuck Arnold ("Arnold") [(collectively referred to as the "Sheriff's defendants")], alleging that defendants acted with deliberate indifference to his serious medical

needs in violation of the Fourteenth Amendment to the United States Constitution. Plaintiff also alleged that defendants Arnold, Carcirieri, Cox, and Worth violated his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution in relation to the performance of a body cavity search. [Plaintiff also alleged a supervisor liability claim against defendant Winders and a bystander liability claim against defendant Carcirieri arising out of the search]. Finally, plaintiff alleged that [defendants were responsible for] prison conditions at the detention center [which] violated the Fourteenth Amendment. After filing his complaint, plaintiff filed a motion for a jury demand, which the court granted.

On January 27, 2014, counsel for defendant Winders filed a suggestion of death on defendant Winders' behalf. On the same date, defendant McCaskill filed two separate motions to dismiss. In his first motion, defendant McCaskill sought dismissal of plaintiff's complaint on the grounds that plaintiff failed to state a Fourteenth Amendment claim for deliberate indifference to his serious medical needs. In his second motion, McCaskill sought dismissal of plaintiff's complaint on the alternative ground of insufficient service of process. Defendants Arnold, Cox, Greenfield, Scott, and Worth subsequently filed a motion to dismiss arguing that plaintiff failed to exhaust his administrative remedies prior to filing this action. Alternatively, these defendants argued failure to obtain proper service of process and failure to state a claim upon which relief may be granted. Finally, defendant Carcirieri filed a motion to dismiss, arguing that plaintiff failed to state a claim upon which relief may be granted. The motions were fully briefed.

On February 11, 2014, plaintiff filed a motion to compel defendants to provide him with a copy of the videotape recording of the body cavity search at issue. In response, defendants Arnold, Cox, Greenfield, Scott, and Worth filed a motion to stay discovery pending the court's resolution of the pending motions to dismiss. The motion was fully briefed. Plaintiff next filed a motion to consolidate this action with another action he filed–Edwards v. Cox, 5:13-CT-3241-FL (E.D.N.C. 2013). [On March 7, 2014, plaintiff filed the declaration of Tracey Horne regarding plaintiff's behavior while he was at home on bond.] On August 15, 2014, the court entered an order denying plaintiff's motion to consolidate. The court also granted defendants' motion to stay discovery and denied as moot plaintiff's motion to compel. Finally, the court dismissed, without prejudice, plaintiff's individual capacity claims against defendant Winders. As for plaintiff's official capacity claims against defendant

Winders, the court substituted Wayne County Sheriff Larry M. Pierce for defendant Winders as the proper party.

The court entered a second order on September 3, 2014, addressing the remaining pending motions. Specifically, the court denied defendants' motions to dismiss asserting insufficient service of process and failure to exhaust administrative remedies. The court, however, granted defendant McCaskill's Rule 12(b)(6) motion to dismiss, and dismissed McCaskill as a defendant from this action. As for the motion to dismiss filed by defendants Arnold, Cox, Greenfield, Scott, and Worth, the court dismissed plaintiff's Fourteenth Amendment claims asserting that plaintiff was denied access to the telephone and that defendants acted with deliberate indifference to plaintiff's serious medical needs. The court denied the remainder of the Rule 12(b)(6), motion filed by defendants Arnold, Cox, Greenfield, Scott, and Worth. Finally, the court denied Carcirieri's motion to dismiss, and the court dismissed plaintiff's negligence claims without prejudice.

On September 12, 2014, plaintiff filed a motion for funds for a physical examination, and then filed a notice of interlocutory appeal. Plaintiff also filed a motion to appoint counsel. On October 6, 2014, plaintiff filed a pleading captioned "subpoena for production of documentary evidence," in which plaintiff again requested a copy of any video-tape evidence of the search at issue. On that same date, defendant Pierce filed a motion to dismiss pursuant to Rules 12(b)(1),(2),(4),(5), and (6). Plaintiff then filed a motion to continue his sentencing in United States v. Edwards, 5:13-CR-236-FL (E.D.N.C. Nov. 6, 2014), and a notice of deposition. Defendants Arnold, Carcirieri, Cox, Greenfield, McCaskill, Scott, and Worth filed a motion for a protective order on November 13, 2014. On the same date, the court entered an order denying plaintiff's motion for a physical examination, motion to appoint counsel, and motion for a subpoena. The court also denied as moot plaintiff's motion to continue his sentencing in United States v. Edwards, 5:13-CR-236-FL (E.D.N.C. Nov. 6, 2014).

On November 19, 2014, the court entered an order granting defendants' motion for a protective order and struck plaintiff's notice of deposition. On the same date, plaintiff filed a motion to take defendants' depositions, which was fully briefed. Plaintiff then filed a motion to compel discovery, which also was fully briefed. On January 21, 2015, the Fourth Circuit Court of Appeals dismissed plaintiff's interlocutory appeal. Plaintiff subsequently filed another

motion to compel discovery and a motion for the production of documents. On February 4, 2015, the court entered another order denying, without prejudice, plaintiff's motion to take depositions and motion to compel. Following the court's February 4, 2015, order, plaintiff filed a motion to appoint counsel, motion to subpoena, and motion to take depositions. The motions were fully briefed.

On February 23, 2015, plaintiff filed a motion to voluntarily dismiss defendant Carcirieri pursuant to Federal Rule of Civil Procedure 41(a). The motion was fully briefed. On March 3, 2015, defendants Arnold, Cox, Greenfield, Pierce, Scott, and Worth filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) arguing that plaintiff failed to establish a constitutional violation. Alternatively, these defendants moved to dismiss plaintiff's action pursuant to Rules 12(b)(2)(4), and (5) for failure to obtain proper service and pursuant to Rule 12(b)(6) for failure to exhaust his administrative remedies. These defendants also asserted the affirmative defense of qualified immunity. Plaintiff responded to defendants' motion and filed an affidavit of sexual assault. Plaintiff subsequently filed a motion to amend his production of documents request and a motion for an in camera inspection. On April 2, 2015, plaintiff moved to withdraw his motion to voluntarily dismiss defendant Carcirieri. Plaintiff then filed a motion to find defendants in contempt. On April 14, 2015, defendants Arnold, Cox, Greenfield, Pierce, Scott, and Worth moved to strike plaintiff's response to their motion for summary judgment.

On April 22, 2015, the court entered an order denying plaintiff's motion to appoint counsel, and motion for contempt. The court granted plaintiff's motion to withdraw his motion to voluntarily dismiss defendant Carcirieri, and denied as moot plaintiff's motion for voluntary dismissal. The court also granted defendants' motion for a protective order, and denied without prejudice plaintiff's discovery-related motions, as well as, plaintiff's related request for sanctions. On the same date, defendant Carcirieri filed a motion requesting that the court re-consider its decision to allow plaintiff to withdraw his motion for voluntary dismissal, which the court denied. The court, however, granted defendant Carcirieri leave to file a motion for summary judgment.

On April 23, 2015, defendant Carcirieri filed a motion for summary judgment pursuant to Rule 56(a) arguing that plaintiff is unable to establish a constitutional violation. Plaintiff filed an affidavit on April 27, 2015. On June 22, 2015, plaintiff filed a motion to stay the

4

proceedings because he was experiencing depression, and provided an affidavit in support of his motion. The motion was fully briefed. On July 31, 2015, the court entered an order denying defendants' motion to strike and plaintiff's motion to stay. On August 21, 2015, plaintiff filed an affidavit of sexual assault.

On August 17, 2015, plaintiff responded to Carcirieri's motion and, in his response, requested that the court lift the protective order so that plaintiff may obtain a copy of the video or audio tape recording of the alleged sexual assault. [On August 21, 2015, plaintiff filed a pleading captioned "Affidavit of Sexual Assault."] On August 31, 2015, the court entered an order in which it denied plaintiff's request to lift the protective order to permit plaintiff an opportunity to obtain a copy of any video-tape of the alleged March 18, 2013, incident on the grounds that defendant Cox submitted an affidavit stating that no such video exists. The court, however, granted plaintiff additional time to supplement his response to defendant Carcirieri's motion for summary judgment. The court also denied as moot defendant Pierce's October 6, 2014, motion to dismiss on the grounds that he subsequently filed a motion for summary judgment raising the identical arguments.

(DE 159).

On January 12, 2016, the court entered an order denying defendants' respective motions for summary judgment and motion to dismiss. The court also quashed service as to the Sheriff's defendants. The court directed the clerk of court to re-issue service as to the Sheriff's defendants, and such defendants were properly served. Defendant Carcirieri subsequently filed two motions for reconsideration of the court's January 12, 2016, order, which the court denied.

On January 29, 2016, plaintiff filed a motion for production of documents and motion for declaratory judgment. The motions were fully briefed. On March 11, 2016, defendant Carcirieri filed his second motion for summary judgment. Three days later, the court issued a text order informing defendant Carcirieri that his second motion for summary judgment failed to comply with the form required by Local Rule 56.1 and directed him to re-file his motion in accordance with the local rule.

5

On the same date, the Sheriff's defendants filed the instant renewed motion for summary judgment, arguing that plaintiff is unable to establish a constitutional violation. Defendants attach personal affidavits from the following: defendants Cox, Worth, Arnold, Greenfield, Carcirieri, and McCaskill; Lee Szatkowski, a criminal justice instructor at Wayne Community College; Charles Shaefer, an employee of the Wayne County Sheriff's Department; Michael Dawson, a Corporal with the Wayne County Sheriff's Department; and Harvey Walls, a Sergeant with the Wayne County Sheriff's Department. The Sheriff's defendants also attach plaintiff's grievances, defendant Winder's supplemental response to plaintiff's third request for production of documents, and pertinent portions of plaintiff's medical records. In addition to their motion for summary judgment, the Sheriff's defendants contemporaneously filed a motion to seal McCaskill's affidavit, which the court subsequently granted. The Sheriff's defendants' motion for summary judgment was fully briefed.

On March 21, 2016, defendant Carcirieri re-filed the instant second motion for summary judgment in compliance with the court's March 14, 2016, text order, to which he attached his personal affidavit. In his motion, Carcirieri argues that plaintiff is unable to establish a constitutional violation. Defendant Carcirieri, alternatively, asserts that he is entitled to the affirmative defense of qualified immunity. On March 25, 2016, the court entered an order granting plaintiff's motion to compel and plaintiff's motion for declaratory judgment, which the court construed as a second motion to compel discovery. Of note, it was revealed that a recording of plaintiff in the interview room at the detention center following the March 18, 2013, incident existed. The court directed defendants to make the recording available for plaintiff to view and or hear. The court also denied a request from defendant Winders to sanction plaintiff in connection

6

with his discovery requests. Finally, the court expanded the discovery period to permit defendants to respond to the court's March 25, 2016, order and advised the parties that no further discovery would be permitted.

On April 18, 2016, the Sheriff's defendants filed a notice of compliance indicating that they had provided plaintiff the discovery materials, including a copy of the digital versatile disc ("DVD") recording of plaintiff in the interview room, as directed by the court in its March 25, 2016, order. On the same date, plaintiff filed a motion to amend his response to defendants' renewed motion for summary judgment. Plaintiff then filed a motion to enforce the court's March 25, 2016, order with respect to the court's ruling on the discovery issues. The Sheriff's defendants responded to plaintiff's motion, and plaintiff filed a reply. Plaintiff next filed a motion for a copy of the DVD and a motion to amend his complaint. On June 6, 2016, the Sheriff's defendants filed a motion for a protective order and a response to plaintiff's motion to amend. Plaintiff filed a reply to his motion to amend and a response to the motion for a protective order.

On July 14, 2016, the court entered an order granting plaintiff's motion to amend his memorandum of law in opposition to the Sheriff's defendant's motion for summary judgment, and permitted plaintiff until August 15, 2016, to file any amended response. The court also granted the Sheriff's defendants' motion for a protective order. The court denied plaintiff's motion for copies of the DVD, plaintiff's motion to amend, plaintiff's motion for sanctions, and any attempt by plaintiff to initiate an investigation by the Federal Bureau of Investigation. The court granted plaintiff's motion to compel as to plaintiff's discovery requests from defendant Carcirieri, but denied the remainder of plaintiff's motion. The court directed defendants to provide the court with a copy

7

of the DVD. Finally, the court dismissed defendant Arnold[1] from this action without prejudice pursuant to Federal Rule of Civil Procedure 41(a).

On July 18, 2016, defendant Carcirieri filed a response to the court's June 14, 2016, order and stated that he did not possess any discovery materials responsive to plaintiff's outstanding discovery requests. Plaintiff then filed a motion for reconsideration of the court's dismissal of defendant Cox and a motion for reconsideration of the protective order governing the DVD. Plaintiff also filed a motion to depose defendants, a motion to be relieved of any responsibility for any consequences of the dissemination of the DVD, motion for requests for admissions, motion for interrogatories, and motion for sanctions. The court received a copy of the DVD of plaintiff's interrogation on July 27, 2016. On August 24, 2016, the court denied plaintiff's motions and relieved defendant Carcirieri from the obligation to provide plaintiff discovery.

## STATEMENT OF FACTS

Except where as otherwise noted below, the facts viewed in the light most favorable to plaintiff may be summarized as follows. On March 18, 2013, defendants Cox and Worth were conducting surveillance of plaintiff after receiving information from a confidential informant that plaintiff was selling mid-level quantities of crack cocaine in the Pikeville, Fremont area. ((DE 189), Ex. A, pp. 2, 5). In the course of their surveillance, the officers observed plaintiff go into a store. (Id.) Cox remained in the car, while defendant Worth followed plaintiff into the store and watched plaintiff purchase sandwich bags as well as a Pyrex measuring cup. (Id.) Defendant Cox believed that plaintiff was going to use such items to cook and package crack cocaine. (Id. p. 2). The officers

---

[1] The court notes that its July 14, 2016, order incorrectly stated that defendant Cox, and not defendant Arnold, was dismissed from this action pursuant to Rule 41(a). The court entered an order correcting its clerical error on July 26, 2016.

then observed plaintiff drive to a residential home and walk through the back door into the home. (Id. pp. 2, 5). After spending approximately one hour in the home, the officers observed plaintiff leave the residence as a passenger in a Ford Ranger truck. (Id.)

At some point after plaintiff left the residence, defendant Carcirieri, a Pikeville police officer assisting the Wayne County Sheriff's Department drug squad with an investigation, stopped the vehicle in which plaintiff was traveling for a seatbelt violation. (Carcirieri Aff. ¶ 3). Defendants Cox and Worth then approached the stopped vehicle and observed plaintiff eating marijuana–a fact which plaintiff disputes. ((DE 189), pp. 2, 5). The officers ultimately arrested plaintiff for possession of marijuana, and defendant Carcirieri transported plaintiff to the detention center. (Carcirieri Aff. ¶ 4; Shaefer Aff. ¶ 2; Cox Aff. ¶ 4). After arriving at the detention center, officers placed plaintiff in a private interview room. (Cox Aff. ¶ 5). Cox made the decision to conduct a strip search of plaintiff due to his belief that plaintiff was concealing recently manufactured crack cocaine on his person. (Id.)

The parties present differing accounts of the search. According to Cox's version of events, Cox began the search at the top of plaintiff's person by removing plaintiff's hat to search for drugs. (Id.) Cox then patted down plaintiff's shirt, removed plaintiff's shoes, searched plaintiff's socked feet, and searched plaintiff's pockets. (Id.) Cox found no drugs.[2] (Id.) Cox then pulled down plaintiff's pants and asked him to bend over. (Id.) Plaintiff failed to follow Cox's instructions, and Cox repeated his order. (Id.) Plaintiff again refused. (Id.) Cox next held onto plaintiff's handcuffs, and leaned plaintiff forward. (Id.) Plaintiff continued to squirm and move away from defendant

---

[2] Because plaintiff was handcuffed behind his back, plaintiff's shirt remained on during the search. (Cox Aff. ¶ 5).

9

Cox so that Cox could not visually inspect plaintiff's rectum. (Id.) Cox did not find any drugs on

plaintiff's person. (Id.)

According to plaintiff's version of the search:

> I was put in waist chain and cuffed [defendants] Worth and [] Arnold
> grab me on each side of my body applied force and pressure on my
> arms & shoulders hurting my wrist, arms shoulder and neck[.] [] Cox
> snatch my sweat pants down then my boxers [] Worth and [] Arnold
> put weight on me more as [] Cox pulled my butt cheeks apart
> violently I was force down more I was screaming in pain could feel
> my rectum stretch and split my rectum was burning [] Cox, [] Worth,
> and [] Arnold kept apply force I felt what I think was fingers press
> against the entrance of my rectum I blocked it out the pain burning,
> humiliation[.] I don't know if I block out the next thing I remember
> was [] Worth asking [] Cox do he see anything or something[,] then
> things just stop they stood me back up sat me down[.] I really felt
> like I had been beat up and rape[.] I tried to act normal but felt like
> a rape victim.

(Compl. pp. 3, 4). Plaintiff further states that during the search, "[] Worth just kept bending my arm

telling me to shut the [] up [] laughing like the devil. [As] I was pulled off floor, [] Cox was

removing bloody gloves from his hands." (Pl. Aff. (DE 153), p. 2).

After the search, Lieutenant Scott walked past the interview room where plaintiff was being

held and heard plaintiff state that he had been raped. (Scott Aff. ¶ 5). Although Scott did not

directly respond to plaintiff, she immediately reported plaintiff's allegation to the arresting officers,

McCaskill, and the nurse. (Id.) McCaskill then went to plaintiff's cell and asked if he could conduct

a medical examination of plaintiff. (McCaskill Aff. ¶ 3 and Sheriff Def.'s Mem. Ex. 11). In

response, plaintiff asked to go to the emergency room. (Id.; Pl. Aff. (DE 153), p. 2). McCaskill in

turn informed plaintiff that detainees were only transported to the emergency room for medical

emergencies, and that McCaskill did not observe any need for plaintiff to go to the emergency room.

(McCaskill Aff. ¶ 3 and Sheriff Def.'s Mem. Ex. 11). Plaintiff then became irritated. (Id.)

McCaskill again offered to give plaintiff an examination, and plaintiff refused to comply citing lack of privacy as the reason. (Id. and Dawson Aff. ¶ 3; (DE 39), pp. 2-3). Dr. McCaskill did not observe any blood on plaintiff's person or in plaintiff's cell. (McCaskill Aff. ¶ 4 and Sheriff Def.'s Mem. Ex. 11). Dr. McCaskill additionally did not observe any visual signs of trauma. (Sheriff Def.'s Mem. Ex. 11). Dr. McCaskill subsequently left instructions for the detention center staff to observe plaintiff closely for any signs of deterioration in plaintiff's medical status in light of his concern that any potential drugs in plaintiff's rectum could result in an overdose. (Id. ¶ 2 and Sheriff Def.'s Mem. Ex. 11).

After Dr. McCaskill left the interview room, plaintiff remained in the room alone while staff prepared plaintiff's paperwork. (DVD, part 1: 00:00-56:25).[3] Approximately124 minutes of this time period were video recorded. (Id.) Approximately 13 minutes into the recording, defendant Worth entered plaintiff's cell. (Id., part 1: 13:55). Plaintiff stated that defendants had "stretched his ass" and jumped on him like "Iraq." (Id. 14:20-14:42). Plaintiff then engaged in two discussions with defendant Worth as to whether plaintiff had any information regarding other crimes. (Id. part 1: 15:50-18-43; 20:52-32:53). While plaintiff was talking with Worth, plaintiff casually raised one of his legs up onto a table adjacent to the chair he was sitting in, leaving one leg on the ground. (Id. 20:52-25:41; 28:38-34:19).[4] Plaintiff remained seated with his legs spread between the floor and table for two lengthy periods of time. (Id.) In addition to his conversations with defendant Worth, plaintiff and defendant Cox engaged in a calm conversation regarding defendant Cox's belief that

---

[3] The DVD filed by defendants includes three segments. Accordingly, the court refers to the first segment as part 1, and the second segment as part 2, and the third segment as part 3.

[4] Plaintiff can be seen propping his leg up in a similar position later in the video recording as well. (DVD part 2: 14:02-16:38; 32:09-36:59; 48:38-53:02).

plaintiff was concealing drugs in his rectum. (Id. part 2: 3:50-4:19). Plaintiff even laughed and seemed to joke with defendant Cox during that time period. (Id.)

Plaintiff, additionally, asked defendant Worth on two occasions if he could have his handcuffs removed, stating that he was experiencing discomfort in his shoulder due to a prior gunshot wound. (Id. part 1: 18:14; 41:10). Plaintiff later asked defendant Cox twice to have his cuffs removed, again complaining of shoulder discomfort. (Id. part 2: 2:50; 28:48-29:19). Defendant Cox explained that plaintiff was restrained because the officers were waiting for plaintiff to eliminate any drugs concealed in his rectum. (Id. part 2: 28:48-29:19). Defendant Cox eventually removed plaintiff's handcuffs after approximately 124 minutes, allowed plaintiff to stretch, and then re-applied the handcuffs as well as additional restraints in order to transport plaintiff to another location. (Id. part 3: 12:38).

The next day, Officer Harvey Walls transported plaintiff to Wayne Radiology for electromagnetic radiation ("x-ray") testing of his abdomen and pelvis. (Sheriff Def.'s Mem. Ex. 11; Walls Aff. ¶ 3). After arriving at the facility, plaintiff advised a Wayne Radiology employee that he would not undergo any radiology testing. (Walls Aff. ¶ 5 and Sheriff Def.'s Mem. Ex. 11). Plaintiff states that he refused any treatment at Wayne Radiology because the doctors and nurses informed him that they could not conduct a rape kit. (Compl. p. 7). Plaintiff further states that he agreed to consent to radiology testing if he could have his neck and shoulder x-rayed. (Id.) The nurse then indicated that plaintiff was supposed to have his stomach x-rayed, and plaintiff again refused treatment. (Id.) Walls subsequently transported plaintiff back to the detention center. (Walls Aff. ¶ 6).

**DISCUSSION**

A.     Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.     Analysis

1.     Exhaustion of Administrative Remedies

The Sheriff's defendants again raise the affirmative defense that plaintiff failed to exhaust administrative remedies before filing this action. Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") requires a prisoner to properly exhaust his administrative remedies before filing an action under 42 U.S.C. § 1983 concerning his confinement. Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1856 (2016) ("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."); Woodford v. Ngo, 548 U.S. 81, 83–85 (2006) (requiring "proper" exhaustion of administrative remedies); see Jones v. Bock, 549 U.S. 199, 217 (2007) ("failure to exhaust is an affirmative defense under [42 U.S.C. § 1997e]"); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005). The PLRA states that "[n]o action shall be brought

13

with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory. Woodford, 548 U.S. at 85; Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."). A prisoner must exhaust his administrative remedies even if the relief requested is not available under the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). "[U]nexhausted claims cannot be brought in court." Jones, 549 U.S. at 211.

The record reflects that plaintiff filed two grievances, the first related to the alleged sexual assault, and the second related to his alleged inability to obtain medical care. (Greenfield Aff. ¶ 11 and Exs. 5-1 and 5-2). Plaintiff did not appeal either grievance. (Id.) As discussed in the court's January 12, 2016, order, plaintiff states that prison officials did not notify him of their responses to his grievances as evidenced by the fact that the grievance responses were not signed by plaintiff. (See (DE 159), pp. 9-10). The court correctly determined that plaintiff's response to the Sheriff's defendants' exhaustion defense is sufficient to create a genuine issue of material fact as to whether the detention center staff prevented him from exhausting his administrative remedies for his first and second grievances. See Hill v. Haynes, 380 F. App'x 268, 272-273 (4th Cir. 2010); Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

Defendants next attest that plaintiff failed to file any grievance related to the sanitary conditions of his cell. (Greenfield Aff. ¶ 13). Plaintiff makes conclusory allegations that unknown officers interfered with his ability to file unspecified grievances regarding his cell conditions on

14

unspecified dates.  In any event, plaintiff's conclusory allegations that unknown staff interfered with his ability to exhaust are insufficient to refute defendants' arguments in support of their exhaustion defense.  See Ross, 136 S. Ct. 1850, 1856 ("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."); cf. Hill, 380 F. App'x at 273-274 (finding genuine issues of material fact where plaintiff provided specific and detailed allegations regarding defendants' hindering his ability to exhaust).  Further, in response to defendants' contention that plaintiff failed to exhaust this claim, plaintiff stated:  "Even though my cell conditions was unsanitary and I wanted out of them[,] being sexual assault was more of a concern."  Plaintiff's statement casts doubt on the veracity of his conclusory allegations that he attempted to grieve his cell sanitation claim.  (Pl.'s Resp. (DE 186), p. 4).  Based upon the foregoing, plaintiff's unsanitary cell conditions claims against defendants Greenfield, Cox, and Scott are DISMISSED from this action without prejudice for failure to exhaust administrative remedies.

     2.     Body Cavity Search

Defendants raise the affirmative defense of qualified immunity.  Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  In analyzing whether defendants are entitled to qualified immunity, the court first will first consider whether plaintiff has established a constitutional violation.

a. Fourth Amendment

Plaintiff asserts that defendants Cox and Worth violated his rights pursuant to the Fourth Amendment in the course of the March 18, 2013, body cavity search. The Fourth Amendment guards against unreasonable searches and seizures. U.S. Const. Amend. IV. "[P]retrial detainees[] retain some Fourth Amendment rights upon commitment to a corrections facility," including a limited right to bodily privacy. Bell v. Wolfish, 441 U.S. 520, 545-46 (1979); see King v. Rubenstein, 825 F.3d 206, 214-215 (4th Cir. 2016); Lee v. Downs, 641 F.2d 1117, 1119 (4th Cir. 1981); Farrell v. Cooper, No. 5:13-CT-3097-FL, 2016 WL 866324, at *3 (E.D.N.C. Mar. 3, 2016) ("The Fourth Circuit has recognized a limited Fourth Amendment right to bodily privacy for prisoners."). That said, the Fourth Circuit has held that a body cavity search does not violate the Fourth Amendment if it is reasonable and not motivated by punitive intent. Bushee v. Angelone, 7 F. App'x 182, 184 (4th Cir. 2001) (citing Bell, 441 U.S. at 545-546 ).

In this case, the record reflects that the body cavity search was conducted in an effort to recover drugs which arresting officers suspected plaintiff had concealed in his rectum. (Cox Aff. ¶ 5; (DE 189) Ex. A, p. 2). There is no evidence that Cox or Worth were motivated to conduct the search with the intent to punish plaintiff. Thus, the only issue for consideration is whether the search was reasonable.

Under the Fourth Amendment, a search is reasonable if the need for the search outweighs the invasion of personal rights that the search entails. See Bell, 441 U.S. at 559 (upholding prison policy providing for a visual body cavity strip search of prison inmates, finding that prisons are places fraught with serious security dangers in which inmates attempt to secrete contraband by concealing it in body cavities). The Court in Bell held that the following factors must be balanced

16

in determining the constitutionality of a search: the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.  See id.

Here, plaintiff does not take issue with the location of the body cavity search.  Rather, plaintiff focuses on the scope of the search and the manner in which it was conducted.  In order to fully evaluate the scope and manner of plaintiff's body cavity search, the court first must determine whether the search was a visual body cavity search, which consists of a visual inspection of the detainee's anal and genital areas, or a manual body cavity search, which includes some degree of touching or probing of body cavities.  See Cantley v. West Virginia Regional Jail and Corr. Facility Authority, No. 3:09-0758, 2013 WL 5531855, n. 2 (S.D.W. Va. Oct. 4, 2013) (citing Blackburn v. Snow, 771 F.2d 556, 561 n. 3 (1st Cir.1985)), aff'd on other grounds, 771 F.3d 201 (4th Cir. 2014).  Although defendant Cox attests that he did not physically touch plaintiff's rectum, plaintiff stated in his complaint that he "thinks" he felt "fingers press against the entrance of my rectum."  (Cox Aff. ¶ 5; Compl. pp. 2, 3).  Plaintiff additionally stated that he "felt penetrated."  (Pl.'s Aff. (DE 153), p. 2).  Viewing the evidence in the light most favorable to plaintiff, the court assumes for the purposes of defendants' pending motions that defendants Cox and Worth conducted a manual body cavity search of plaintiff's rectum.

The evidence is undisputed that defendants Cox and Worth conducted a single search of plaintiff's body, which was short in duration, and targeted at areas in which plaintiff was suspected of concealing drugs.  To the extent plaintiff alleges that defendant Cox or Worth sexually assaulted him, plaintiff's own perceptions alone that the contact was of a sexual nature are not sufficient to establish a constitutional violation.  See May v. Solomon, No. 5:14-CT-3318-FL, 2015 WL

2190880, at *2 (E.D.N.C. May 11, 2015), ("The plaintiff [] must allege facts beyond merely his own perceptions to demonstrate that the unwanted sexual touching had some sexual aspect to it.") (internal quotation omitted), aff'd, 615 F. App'x 828 (4th Cir. 2015); Berryhill v. Schriro, 137 F.3d 1073, 1076–77 (8th Cir. 1998). Further, to the extent plaintiff alleges that there was any penetration of his rectum, there is no evidence to suggest that such penetration was intentional. Rather, plaintiff's own allegations with respect to this fact cast doubt as to whether any penetration actually occurred. (Compl. pp. 2, 3).

As for plaintiff's allegations that defendants Cox and Worth tore his rectum in the course of the search, plaintiff has presented no evidence to support such claim. The record instead reflects that plaintiff refused all offers of medical treatment after the search, and that the detention center's physician did not observe any blood on or around plaintiff's person or cell. (McCaskill Aff. ¶¶ 3, 4 and Sheriff's Def. Mem. Ex. 11). Further, plaintiff's post-search physical activities reflected in the DVD belie his contention that he suffered any injury to his rectum. Accordingly, given the short duration of the single search, lack of evidence of intent to cause harm, as well as the lack of evidence of a physical injury, the scope and manner factors weigh in favor of finding that the search at issue was reasonable.

The court now turns to the remaining Bell factor–the justification for initiating the search. In this case, defendants Cox and Worth based their decision to conduct the search, in part, on the fact that if plaintiff was concealing drugs in his rectum, he could overdose. (Cox and Worth Aff. ¶ 5; McCaskill Aff. ¶ 2). Cox and Worth, additionally, initiated the body cavity search because they suspected plaintiff had recently manufactured crack cocaine and was concealing it on his person after observing plaintiff chewing marijuana in what defendants Cox and Worth viewed was an

attempt to destroy evidence. (Cox and Worth Affs. ¶ 5; (DE 189), Ex. A, pp. 2, 5). Prison officials have a legitimate penological safety interest in maintaining institutional safety and preventing the introduction of contraband into a jail or prison. See Hudson v. Palmer, 468 U.S. 517, 526-527 (1984). The court further is cognizant of the deference afforded to correctional institutions in devising search policies as set forth in Florence v. Bd. of Chosen Freeholders of Cty of Burlington, __U.S. __, 132 S. Ct. 1510, 1517 (2012), and as recently applied by Goins v. Horne, No. 4:13-CV-01269, 2014 WL 4273319, at *2-3 (D.S.C. Aug. 29, 2014), aff'd, 592 F. App'x 214 (4th Cir. 2015). The Court in Florence specifically recognized that "[d]etecting contraband by new detainees [] is a most serious responsibility . . . ." and that "[w]eapons, drugs, and alcohol all disrupt the safe operation of a jail." Florence, 132 S.Ct. at 1519. Accordingly, in light of the prison's interest in maintaining order, security, and health, and the deference to be given prison officials in devising reasonable search policies, the court finds that this Bell factor weighs in favor of finding that the search was reasonable.

After reviewing all of the Bell factors, the court finds that the search at issue was constitutional. Because plaintiff failed to establish a constitutional violation, defendants are entitled to qualified immunity for plaintiff's Fourth Amendment claim. Thus, defendants' motion for summary judgment is GRANTED for this claim.

> b.      Excessive Force

Conditions of confinement of pretrial detainees in state custody are evaluated under the Due Process Clause of the Fourteenth Amendment. See Bell, 441 U.S. at 535. In Kingsley v. Hendrickson, 135 S. Ct. 2466 (2016), the United States Supreme Court recently held that a pretrial detainee asserting an excessive force claim must demonstrate "only that the force purposely or

knowingly used against him was objectively unreasonable." Id. at 2473. In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. Kingsley, 135 S. Ct. at 2473.

Applying the Kingsley factors to the instant action, plaintiff's claim fails. As stated, the search was performed in an effort to maintain the detention center's security due to the potential risk of the introduction of any concealed controlled substances and for plaintiff's own personal safety due to the risk of a drug overdose, which both are legitimate penological interests. See Florence, 132 S.Ct. at 1519; McRae v. Johnson, 261 F. App'x 554, 558 (4th Cir. 2008) (finding that "in the prison setting, suppression of contraband ... [and] maintaining the health and safety of inmates and staff ... constitute compelling governmental interests.") (emphasis added) (citing Cutter v. Wilkinson, 544 U.S. 709, 722 (2005)). There is no evidence that defendants Cox or Worth intended to cause plaintiff harm. See Snider v. Hughes, No. 95-6052, 1995 WL 378519 at *1 (4th Cir. June 27, 1995) ("Body cavity searches of inmates are often necessary and are not violative of the Fourth or Eighth Amendments if reasonable and not motivated by a punitive intent."); accord Nelson v. S.C. Dep't of Corr., No. 6:12–2066, 2013 WL 4522788 at *5 (D.S.C. Aug. 26, 2013) (citing cases); see also Mathews v. Raemisch, 513 F. App'x 605, 608 (7th Cir. 2013) ("Eighth Amendment violations

occur in . . . strip searches, only if officers conduct themselves without justification in a harassing manner intended to humiliate and cause psychological pain.").

Plaintiff, additionally, has not established that he suffered any serious injury due to the search or that defendants Cox and Worth acted unreasonably under the circumstances. Plaintiff's allegations that defendants Cox and Worth "applied force and pressure" on his arms and shoulders causing his wrist, arms, shoulder, and neck to hurt are not sufficient to establish that the officers acted unreasonably in their efforts to obtain compliance with their search, particularly where Cox and Worth perceived that plaintiff was being uncooperative. See Graham, 490 U.S. at 396 (recognizing that "not every push or shove, even if it may later seem unnecessary" amounts to a deprivation of a constitutional right); (Cox Aff. ¶ 5; Worth Aff. ¶ 7). As for plaintiff's allegation that his rectum was torn in the course of the search, there is no evidence to substantiate this allegation or that plaintiff suffered any injury. In fact, the post-search DVD recording of plaintiff in the interview room belies plaintiff's claims of injury. (See DVD, part 1: 20:52-25:41; 28:38-34:19).

Finally, courts considering claims presenting facts similar to those presented in the instant action have been dismissed for not rising to the level of a constitutional violation. See, e.g., Hall v. James, No. 3:14CV136, 2016 WL 4570412, at *1, 6 (N.D. W. Va. June 21, 2016) (finding no constitutional violation where plaintiff alleged an officer "reached around and rubbed my entire genital area, penis sack, then ball banged me from behind and ran his hand up my ass crack so hard it caused my underwear and his finger go inside my asshole."), adopting report and recommendation, 2016 WL 4538615 (Aug. 30, 2016); Caldwell v. Crossett, No. 9:09cv576, 2010 WL 2346337 (N.D. N.Y. May 24, 2010) (claim that corrections officer grabbed plaintiff's testicles during a pat-frisk

causing serious pain around his groin area failed to allege a violation of the Eighth Amendment based upon claims of sexual abuse or excessive force); Excell v. Fisher, No. 9:08cv945, 2009 WL 3111711 (N.D. N.Y. Sept. 24, 2009) (allegations that guard grabbed and squeezed prisoner's penis during pat-frisk insufficient to state an Eighth Amendment claim); Morrison v. Cartwright, 397 F.Supp. 2d 424 (W.D.N.Y. 2005) (allegation that corrections officer shown light up inmate's anus, ran his middle finger between inmate's buttocks, causing inmate to urinate upon himself, and rubbing his penis against inmate's buttocks during strip search did not implicate Eighth Amendment.); Boddie v. Schnieder, 105 F.3d 857 (2d Cir. 1997) (affirming the grant of summary judgment to the defendant officers despite the plaintiff inmate's allegations that he was verbally harassed, touched, and pressed against by an officer without his consent, finding that "the sexual abuse [plaintiff] claims to have experienced was not serious enough to constitute cruel and unusual punishment"). Accordingly, after evaluating the Kingsley factors, plaintiff has not established that defendants Cox and Worth used excessive force, and defendants are entitled to qualified immunity.

Given the fact that there is no underlying constitutional violation, plaintiff's supervisor liability claim against defendant Winders or his bystander liability claims against defendant Carcirieri also lack merit. See Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 420 (4th Cir. 1996) (holding that absent an underlying constitutional violation, no § 1983 liability attaches to a supervisor); Thomas v. Holly, 533 F. App'x 208, 221 (4th Cir. 2013) (noting that a finding of bystander liability for a defendant required a finding of excessive force by another defendant). Thus, defendants Winders and Carcirieri's motion for summary judgment is GRANTED as to these claims.

**CONCLUSION**

For the foregoing reasons, the court GRANTS defendants' respective motions for summary judgment (DE 176, 183). Plaintiff's sanitation-related claims are dismissed without prejudice to provide plaintiff the opportunity to re-file his action after he has properly exhausted his administrative remedies for such claims. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 16th day of September, 2016.

LOUISE W. FLANAGAN
United States District Judge